UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HIUVER ARMANDO CASTRO
MARADIAGA,

Petitioner,

v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY, *et al.*,

Respondents.

Case No.  1:25-cv-1779-DJC-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Hiuver Armando Castro Maradiaga was admitted into the United States in 2019 and was arrested and re-detained by ICE in 2025.  Since his re-detention, petitioner has not received a bond hearing.  Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his re-detention, absent a bond hearing, violates the Fifth Amendment.  For the reasons below, I recommend that the petition be granted.

**Background**

On July 25, 2019, petitioner was admitted into the United States, after coming from Honduras.[1]  ECF No. 17 at 20, 28.  The record indicates that petitioner was detained while the Department of Homeland Security determined whether he had a credible fear of persecution in

---

[1] The deportation officer assigned to petitioner's case states that petitioner entered the United States in 2019 "without inspection, admission or parole."  ECF No. 17 at 3.  This does not appear to be correct, however.  Petitioner was previously removed from the United States to Honduras in 2017.  *Id*.  In asserting that petitioner entered the United States in 2019 without admission, the deportation officer cited evidence of petitioner's entry in 2017.  *See id*. at 3, 15-17.  In contrast to the 2017 arrival, the record establishes that petitioner was admitted to the United States on July 25, 2019.  *See id*. at 20, 28.

1

connection with his asylum request.  *Id*. at 20-21.  On the following day, petitioner was released and issued a Notice to Appear.  *Id*. at 3.  On July 21, 2020, petitioner filed for asylum.  *Id*.  On June 18, 2023, after an immigration judge denied his application, petitioner filed an appeal with the Board of Immigration Appeals.  *Id*.  The appeal remains pending.  *Id*.

Petitioner has been convicted of assault on two occasions.  In January 2020, petitioner was arrested and charged with assault under California Penal Code § 240.  ECF No. 17 at 4.  He pleaded guilty to that charge.  *Id*. at 38.  In November 2023, petitioner was again arrested and charged this time with assault under § 242.  *Id*. at 4.  He also pleaded guilty to that charge.  *Id*. at 39.

Since being admitted to the United States, petitioner has been enrolled in the Alternative to Detention, Intensive Supervision Appearance Program.  *Id*. at 4.  On three occasions in June 2025, petitioner failed to comply with certain program requirements.  *Id*.  On July 28, 2025, petitioner was re-detained by ICE in San Francisco, California.  *Id*.

## Procedural History

On December 8, 2025, petitioner, initially proceeding pro se, filed a petition for writ of habeas corpus, ECF No. 1, and a motion to appoint counsel, ECF No. 3.  The court granted petitioner's request on December 12, 2025, ECF No. 5, and appointed counsel appeared on December 31, 2025, ECF No. 8.[2]  On February 10, 2026, respondents filed an answer to the petition.  ECF No. 15.  On February 16, 2026, petitioner filed a reply.  ECF No. 16.

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.

---

[2] Thereafter, petitioner elected not to file an amended petition.  ECF No. 14.

2

28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner argues that respondents violated his Fifth Amendment Due Process rights by re-detaining him without a bond hearing.  ECF No. 1 at 10-16.  Notably, respondents have offered little response to petitioner's sole claim.  Instead, respondents advance an argument premised on an assertion that petitioner is an "applicant for admission" within the meaning of 8 U.S.C. § 1225(a) and that he was re-detained under 8 U.S.C. § 1225(b)(2)(A).  ECF No. 15 at 17-24.  Respondents rely on other district court decisions making similar determinations and on *In re Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025), a decision that has been since vacated, *see Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2026 WL 468284, at *12 (C.D. Cal. Feb. 18, 2026).  Respondents do not explain what, if any, alternative grounds support their statutory position.  More fundamentally, respondents' focus is misplaced, since they only briefly address the due process claim on its merits, and even then only through the lens of their statutory argument.[3]  *See* ECF No. 15 at 25-26.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the

---

[3] Similarly, respondents' request to stay the instant action is denied because the Court of Appeals' forthcoming decision—which will presumably address the merits of respondents' statutory argument—will not be dispositive of petitioner's due process claim.  *See* ECF No. 15 at 9.  Moreover, there appears to be no prejudice against respondents from denying the requested stay because they have filed their opposition to the petition.

3

liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted). In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their continued release. *See, e.g.*, *Lopez v. Lyons*, No. 2:25-cv-3174-DJC-CKD, 2025 WL 3124116, at *3 (E.D. Cal. Nov. 7, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Shoimov v. Chestnut*, No. 1:25-cv-1603-CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026). I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a liberty interest in his continued release.

Immigration officials released petitioner on his own recognizance in 2019. ECF No. 17 at 20. Although respondents argue that petitioner "was present in the United States without admission"—an assertion that, as noted, is belied by the record—they acknowledge that he "was initially released on his own recognizance in 2019" and that he was "re-detained on July 28,

4

2025." *See* ECF No. 15 at 9, 19. Moreover, the record indicates that petitioner was detained after he presented himself at the border in 2019. He "was afforded the opportunity to notify someone of his detainment," had access to "toilet, sink, drinking water, snacks and food," and "was placed in a room with adequate temperature control and ventilation." ECF No. 17 at 21. Notably, although petitioner arrived at the border on July 25, 2019, at approximately 6:30 p.m., he was not issued the Notice to Appear until the following day. *See id*. at 20. This evidence supports the finding that petitioner was detained at the border and then released on his own recognizance.

Since his release, petitioner has lived in the United States, subject to ICE supervision but outside of custody, for over five years. During that time, he has formed "enduring attachments of normal life." *See Morrissey*, 408 U.S. at 482. I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Here, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Prior to his re-detention, petitioner had been released in the United States under the supervision of ICE for over five years. During that time, he applied for asylum and worked in general construction. *See* ECF No. 1 at 6; ECF No. 17 at 3; *see also Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States."). Respondents' only argument relies on court cases concerning the due process implications of mandatory detention under 8 U.S.C. § 1226(c)—a statutory provision that respondents do not argue applies to petitioner, and thus it is unnecessary to address such case law. *See* ECF No. 15 at 25.

Turning to the second *Mathews* factor, the risk of erroneous deprivation is high. Petitioner was released on his own recognizance after his initial detention at the border. Prior to releasing petitioner, immigration officers necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL

1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's re-arrest; more generally, they give the court no reason to believe that any efforts were made to prevent erroneous deprivation of petitioner's liberty. *See id*. While respondents argue that petitioner is "a danger to society" and "potential flight risk" based on his arrests for assault and his violations of certain requirements of the Alternative to Detention, Intensive Supervision Appearance Program, "allowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1035 (N.D. Cal. 2025); ECF No. 15 at 26; ECF No. 17 at 4. Moreover, respondents' reliance on the statutory authority for detention is misplaced; as noted, "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *See Rico-Tapia*, 2025 WL 2950089, at *8; ECF No. 15 at 25.

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar*, 2025 WL 3063629, at *5. Indeed, respondents have provided no information about the additional burden that would fall on them as a result of being required to provide a bond hearing. *See* ECF No. 15 at 25-26. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner requests that he be released or, in the alternative, be provided a bond hearing. ECF No. 1 at 19. Respondents argue that any relief should be in the form of a bond hearing. ECF No. 15 at 26.

Under the circumstances presented, I find that a bond hearing is the proper remedy because respondents present prima facie evidence that petitioner could present a danger to the community or risk of flight. First, petitioner failed to comply with certain requirements of the Alternative to Detention, Intensive Supervision Appearance Program; before his re-detention on

July 28, 2025, petitioner missed biometric check-ins on June 7, June 15, and June 28, 2025.  ECF No. 17 at 4.  Second, petitioner has been convicted of assault on two occasions.  In January 2020, petitioner was arrested and charged with infliction of corporal injuries on a spouse under California Penal Code § 237.5(A), intent to terrorize under § 422(A), willful cruelty to a child under § 273A(B), and assault under § 240.  *Id*.  After pleading guilty to the assault charge, the other charges were dismissed.  *Id*.  In November 2023, petitioner was arrested and charged with child cruelty under § 273(A)A.  *Id*.  Petitioner pleaded guilty to a later-added assault charge under § 242, and the child cruelty charge was dismissed.[4]  *Id*.

While this evidence might prove insufficient for the government to carry its burden at the hearing, it is sufficient to support the finding that "due process is satisfied if Petitioner is provided with a post-deprivation bond hearing within five days."  *See Archundia v. Wofford*, No. 1:26-cv-1452-DJC-CSK, 2026 WL 607977, at *2 (E.D. Cal. Mar. 4, 2026) (finding a bond hearing to be the proper remedy where petitioner was previously arrested for "allegedly engaging in prostitution") (citing *J.S.H.M. v. Wofford*, No. 1:25-cv-1309-JLT-SKO, 2025 WL 2938808, at *15-16 (E.D. Cal. Oct. 16, 2025)).

## Conclusion

Based on the foregoing, I recommend that petitioner's writ of habeas corpus be granted.

Accordingly, it is hereby RECOMMENDED that:

1.  The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2.  Petitioner be provided a bond hearing within five days of the date of the court's order.  At this hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have counsel present.

3.  Respondents be ordered to file a status report, within five days of the bond hearing,

---

[4] Under California Penal Code § 1203.425, petitioner was granted conviction relief for both assault convictions.  ECF No. 17 at 4.  There is no indication, however, that such convictions could not be considered at a bond hearing.  Indeed, the statute suggests they could be.  *See* Cal. Penal Code § 1203.425(a)(4)(C) ("Relief granted pursuant to this section has no effect on the ability of a criminal justice agency to access and use records that are granted relief to the same extent that would have been permitted for a criminal justice agency had relief not been granted.").

confirming that the hearing has been provided.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     March 12, 2026     _____

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

9